**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THE PARISH OF JEFFERSON** | * | **CIVIL ACTION: 2:18-CV-05252** |
| | * | |
| **VERSUS** | * | **JUDGE LEMELLE** |
| | * | |
| **CANLAN OIL COMPANY, et al.** | * | **MAGISTRATE JUDGE CURRAULT** |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

---

**JOINT MEMORANDUM OF PLAINTIFF AND INTERVENORS**
**IN SUPPORT OF MOTION FOR REMAND**

---

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

I.     CURRENT POSTURE OF EASTERN DISTRICT COASTAL CASES EXPLAINED . . . . . . . . . . . . 1

II.    THE ACTIVITIES OF A DEFENDANT IN THE "OPERATIONAL AREA"
       OF A RELATED REFINERY CASE ARE IRRELEVANT TO THE JURISDICTIONAL
       ISSUES IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   FEDERAL OFFICER DOES NOT EXIST IN THE RELATED REFINERY CASES . . . . . . . . . . . . . 4

IV.    *RIVERWOOD* NOT FACTUALLY DISTINGUISHABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     THE SAME REFINERY-BASED ARGUMENTS WERE REJECTED IN *RIVERWOOD* . . . . . . . . . . 11

VI.    PRODUCING CRUDE OIL HAS NEVER BEEN A GOVERNMENT TASK . . . . . . . . . . . . . . . . . 13

VII.   THE JURISDICTIONAL REQUIREMENT OF A COLORABLE FEDERAL DEFENSE . . . . . . . . . . 16

VIII.  THE FIFTH CIRCUIT'S FINDINGS IN *RIVERWOOD* CONTROLS . . . . . . . . . . . . . . . . . . . . . 17

## TABLE OF AUTHORITIES

*Arizona v. Manypenny,*
101 S.Ct. 1657, 1664 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Davis v. South Carolina,*
551 U.S. 142 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Glenn v. Tyson Foods, Inc.,*
40th F.4th 230, 236 (5th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jackson v. Avondale Indus. Inc.,*
469 F. Supp. 3d 689, 701 (E.D. La. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jax Leasing v. Xiulu Ruan,*
395 F.Supp. 3d 1129, 1136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Latiolais v. Huntington Ingalls, Inc.,*
951 F.3d 286, 291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-8, 11-2, 16

*Mayor & City Council of Baltimore v. BP P.L.C.,*
2022 WL 1039685, at *28 (4th Cir. Apr. 7, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Mesa v. California,*
489 U.S. 121, 129 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Plaquemines Parish v. Caskids, et al.,*
2:18-CV-05262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

*Plaquemines Parish v. Chevron USA, Inc.,*
22-30055, 2022 WL 9914869 (5th Cir. Oct 17, 2022) . . . . . . . . . . . . . . . . . . . . . 1, 5-7, 13

*Plaquemines Parish v. Goodrich Petroleum, et al.,*
2:18-CV-05238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

*Plaquemines Parish v. LLOG Exploration & Production Co., L.L.C., et al.*
2:18-CV-05265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

*Plaquemines Parish v. Linder Oil Company, et al.,*
2:18-CV-05231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Plaquemines Parish v. Palm Energy Offshore, L.L.C.,*
2:18-CV-05259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

ii

*Plaquemines Parish v. Riverwood Prod. Co.*,
  18-CV-05217, 2022 WL 101401, at *7, 2019 WL 2271118 (E.D. La. May 28, 2019),
  7 F.4th 362 (5th Cir.2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Plaquemines Parish v. Total Petrochemicals & Refining USA, Inc., et al.*,
  2:18-CV-05267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6, 14

*Sawyer v. Foster Wheeler LLC*,
  860 F.3d 249, 255 (4th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Bernard et al v. Atlantic Richfield, et al.*,
  2:18-CV-05222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*St. Charles Surgical Hosp. v. Louisiana Health Serv.*
  990 F.3d 447, 454-455 (5th Cir.2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Watson v. Philip Morris Companies, Inc.*,
  551 U.S. 142, 147 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-4, 14-15, 17

*Williams v. Todd Shipyards Corp.*,
  154 F.3d 416 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Willingham v. Morgan*,
  395 U.S. 402, 406-07 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Winters v. Diamond Shamrock*,
  149 F.3d 387, 398–400 (5th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

28 U.S.C. § 1442 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

I.       CURRENT POSTURE OF EASTERN DISTRICT COASTAL CASES EXPLAINED

Thirty Louisiana coastal lawsuits were removed for a second time to this District in May, 2018. Identical removal notices alleging federal officer and federal question jurisdiction were filed in all thirty cases. *Parish of Plaquemines v. Riverwood Prod. Co*., Docket No. 18-5217 (hereinafter referred to as "*Riverwood*")[1] was designated as the lead case, and the remaining twenty-nine cases were stayed pending its outcome. In August, 2021, the Fifth Circuit in *Riverwood* rejected the defendants' allegations of federal question jurisdiction.[2] Then over a year later, the Fifth Circuit in *Riverwood* held that WWII crude oil producers were not controlled by federal officers, and ordered remand to state court.[3] Motions for rehearing and for a stay of the mandate were denied. Plaintiff and Intervenors then moved to re-open the remaining twenty-nine cases in this District. This case is one of the seventeen cases that have thus far been re-opened.

In these re-opened cases, Defendants point to a subset of ten of the twenty-nine remaining cases, referred to as the "Related Refinery Cases," and proffer a newly minted argument that these ten cases "give rise to federal-officer jurisdiction" because, unlike *Riverwood*, they involve a different factual setting where a defendant acted as a producer of crude oil that the same defendant then refined to fulfill government refinery contracts during WWII.[4] This case is not listed as a Related Refinery Case in the re-opened cases. Nonetheless, Defendants argue that a finding of federal officer jurisdiction in the Related Refinery Cases would also require a finding of federal-officer jurisdiction in cases like this one, ***and like Riverwood itself***, where ***no*** defendant produced

---

[1]18-CV-5217, 2019 WL 2271118 (E.D. La. May 28, 2019).

[2]7 F.4th 362 (5th Cir.2021).

[3]*Plaquemines Par. v. Chevron USA, Inc*., 22-30055, 2022 WL 9914869 (5th Cir. Oct. 17, 2022).

[4]As an example, *see* ten cases listed in *Parish of Plaquemines v. Linder Oil Company, et al.*, 2:18-cv-5231, Doc. 57, ECF page 19.

crude in the "operational area" defined in the petition that it also refined under a government contract. This argument is premised on the assumption that the alleged damage caused in the "operational areas" of the **non**-Related Refinery Cases in this District "was at least partially caused" by the activities of a defendant in one or more of the ten Related Refinery Cases that is also a defendant in this case.

## II.    THE ACTIVITIES OF A DEFENDANT IN THE "OPERATIONAL AREA" OF A RELATED REFINERY CASE ARE IRRELEVANT TO THE JURISDICTIONAL ISSUES IN THIS CASE

Unable to distinguish the present case from *Riverwood*, Defendants argue that this case is removable because Plaintiff seeks to hold Defendants liable for the alleged damage sustained in this **non-**Related Refinery Case caused by the charged conduct alleged in the entirely separate Related Refinery cases. Each of the Louisiana coastal cases contains an defined "operational area" which describes the areal extent of the land upon which the "charged conduct" in the petition occurred. Despite the fact that Plaintiff expressly limits its claims in this case to Defendants' conduct occurring only within the specific operational area defined in the petition, Defendants argue that removal of this case is not dependent on, or limited to, their WWII conduct in this specific operational area. They argue that Plaintiff also seeks to hold them liable in this case for their conduct in the operational areas of the Related Refinery Cases. In support of this argument, Defendants rely in the main on generalized statements in the expert report in the *Rozel* case[5] regarding the effects of oil and gas activities in coastal areas. Such an argument altogether ignores the threshold requirements for establishing federal officer jurisdiction.

---

[5]*See Parish of Plaquemines v. Rozel Operating Company, et al*, 2:18-CV-05189. The expert report issued in *Rozel* triggered this second round of removals of all of the Louisiana coastal cases, including this case. See Doc. 1-2 in this case.

The Supreme Court in its *unanimous* opinion in *Watson v. Philip Morris Companies, Inc.* noted that §1442 permits removal only if a defendant, "in carrying out the 'act[s]' *that are the subject of the petitioners' complaint*, was 'acting under' any 'agency' or 'officer' of 'the United States.'"[6] Paragraph 3 of the Plaintiff's petition, which is entitled "**AREAL EXTENT OF COMPLAINED-OF OPERATIONS**," expressly limits the Plaintiff's claims to the activities of Defendants conducted within a specifically defined geographical area referred to as the "**Operational Area.**" It says: "In the allegations that follow, the term **"Operational Area"** (hereinafter so called) is used to describe *the geographical extent of the area within which the complained-of operations and activities occurred.*" (emphasis added) In addition to this specification, the petition expressly links each and every one of its substantive allegations, including its prayer, to the Defendants' activities conducted specifically within the defined "Operational Area."[7] Every time the petition alleges that defendants' activities violated the SLCRMA, such

---

[6]*Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147. (emphasis added).

[7]Paragraph 6 states: Defendants' "activities within the Operational Area are governed by the CZM Laws." Paragraph 17 states: "[T]he operations and activities of Defendants within the Operational Area have resulted in the release of contaminants, pollutants, waste, leachate, and toxic substances ...." and "[T]he drilling and production sites and waste facilities of Defendants within the Operational Area were not built to withstand all expectable adverse conditions without releasing pollutants, ...."). Paragraph 18 states: "The operations and activities of Defendants in the Operational Area have resulted in the disposal of radioactive materials . . . Paragraph 19 states: "Defendants drilled and/or operated numerous oil and gas wells within the Operational Area." Paragraph 20 states: "The oil and gas operations of Defendants in the Operational Area included the construction and use of unlined waste pits, ...."). Paragraph 21 states: "The use of waste pits in the Operational Area has a direct and significant impact on state coastal waters ...." and "Defendants have failed to design and construct their waste pits located in the Operational Area using best practical techniques ...." Paragraph 25 states: "Since 1978 and before, Defendants' oil and gas activities have resulted in the dredging of numerous canals in, through, and across the Operational Area."). Paragraph 31 states: "Defendants are liable for the foregoing violations of the state and local CZM Laws, including without limitation, the failure to clear, revegetate, detoxify, and restore to their original condition those portions of the Plaquemines Parish Coastal Zone affected by Defendants' activities within the Operational Area." Paragraph 36 alleges that defendants' "statutory, regulatory and permit violations resulted in 'cumulative impacts' to the area of the coastal zone damaged by defendant's (sic) complained-of activities within the Operational Area." Paragraph (b) of the prayer of the petition states that plaintiffs seek an order for "the

allegations are limited to the "Operational Area." The petition is explicit in limiting the SLCRMA remedies sought *in this case to damage resulting only from activities and operations occurring within the Operational Area defined in this case*.

The acts of a defendant in the operational area of a Related Refinery Case are not the acts of that defendant in the operational area of any other case. Even if it is erroneously assumed that the crude production activities of a defendant in the Related Refinery Cases were federally directed (they obviously were not), the acts of that same defendant in a non-Related Refinery Case that were not federally directed (as in *Riverwood*) would not satisfy the "acting under" prong under the reasoning of the Fifth Circuit's ruling in *St. Charles II*. There, the Fifth Circuit held that a person acting under a federal officer does not necessarily act under that officer for everything he does.[8] None of the crude oil produced in the "Operational Area" *in this case* was sent to a refinery owned by any defendant in this case. Under *Watson* and *St. Charles II,* the acts of the defendants in the Related Refinery Cases have no relevance to the jurisdictional issues in this case. Section 1442 does not countenance a scavenger hunt for delegated federal officers in separately filed cases.

## III.    FEDERAL OFFICER DOES NOT EVEN EXIST IN THE RELATED REFINERY CASES

The arguments of defendants referenced in the following sections of this brief were urged by the defendants in the previously briefed Related Refinery Cases and non-Related Refinery Cases in

---

payment of costs necessary to . . . restore the Plaquemines Parish Coastal Zone . . . to its original condition . . . .," but this statement is limited by the preface to the prayer: "WHEREFORE, Plaintiffs demand judgment against Defendants **(subject to the limitations set forth in this petition)."** (emphasis supplied). Under the Fifth Circuit's *Riverwood* decision, ***none of the complained-of activities*** in this case were controlled by a federal officers.

[8]*St. Charles Surgical Hosp. v. La. Health Serv.*, 990 F.3d 447, 455 (5th Cir.2021)

this District.[9]

At the outset, it should be noted that if federal officer jurisdiction in the Related Refinery Cases does not exist, this case (and the other twenty-eight coastal cases pending in this District) is rendered indistinguishable from *Riverwood,* and thus, Plaintiff and Intervenors are entitled to an order of remand, as the Fifth Circuit's *Riverwood* ruling would control.

Defendants argue that the Related Refinery Cases are distinguishable from *Riverwood* because at least one defendant in each Related Refinery Case produced crude that it also refined. The Related Refinery Cases, however, are indistinguishable from *Riverwood*. Defendants offer no evidence of any WWII government contracts to produce crude (none exist, anywhere),[10] and no evidence that their crude production activities in the Related Refinery Cases were subject to federal controls that the Fifth Circuit found to be absent in *Riverwood*.  Instead, they attempt to distinguish *Riverwood* solely on the basis of *alleged* government controls in refinery contracts in the Related Refinery Cases that ***do not address*** crude production activities.

The Fifth Circuit in *Riverwood,* citing *Latiolais*, held that Defendants had the burden of

---

[9]*See Parish of Jefferson v. Exxon Mobil Corporation, et al.,* 2:18-CV-05257; *Parish of Jefferson v. Atlantic Richfield Company, et al.,* 2:18-CV-05246; *Parish of Plaquemines v. BEPCO, L.P., et al.,* 2:18-CV-05258; *Parish of Plaquemines v. Campbell Energy Corporation, et al.,* 2:18-CV-05265; *Parish of Plaquemines v. Caskids Operating Company, et al.,* 2:18-CV-05262; *Parish of Plaquemines v. ConocoPhillips Company, et al.,* 2:18-CV-05230; *Parish of Plaquemines v. Equitable Petroleum Corporation, et al.,* 2:18-CV-05220; *Parish of Plaquemines v. Goodrich Petroleum Company, L.L.C., et al.,* 2:18-CV-05238; *Parish of Plaquemines v. Helis Oil & Gas Company, LLC, et al.,* 2:18-CV-05260; *Plaquemines v. June Energy, Inc., et al.;* 2:18-CV-05218; *Parish of Plaquemines v. LLOG Exploration & Production Co., L.L.C., et al.,* 2:18-CV-05265; *Parish of Plaquemines v. Linder Oil Company, et al.,* 2:18-CV-05231; *Parish of Plaquemines v. Northcoast Oil Company, et al.,* 2:18-CV-05228*; Parish of Plaquemines v. Total Petrochemicals & Refining USA, Inc., et al.,* 2:18-CV-05267.

[10]The Fifth Circuit in *Riverwood* concluded:"We hold that Producers are not entitled to removal under § 1442 because (1) there is insufficient 'evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement' indicating that the oil companies acted under a federal officer's or agency's directions . . ." *Plaquemines Par. v. Chevron USA, Inc*., 22-30055, 2022 WL 9914869, at *2 (5th Cir. Oct. 17, 2022).

proving, *inter alia*, that they "acted pursuant to a federal officer's [or agency's] directions."[11]  Finding no "federal direction" of crude production in the record, the Court held that Defendants failed to carry their burden. Now Defendants claim that their refinery contracts in the Related Refinery Cases supply the necessary federal directions missing in *Riverwood,* but they point to no provision in any refining contract that directs crude production. Instead, they point to the causation element of the "*Latiolais*" test as supplying the "federal direction" missing in *Riverwood*.[12] But under the *Latiolais* test, the causation element itself requires federal directions ("the charged conduct is connected or associated with an act pursuant to *a federal officer's directions*"), and federal directions of crude production are nowhere to be found in the refinery contracts, or anywhere else.

Simply put, federal officer jurisdiction requires the existence of "an act pursuant to a federal officer's directions" ("an act under color of such office"), but Defendants cannot prove the existence of such an act because there are no proven federal directions *of crude production* in the Related Refinery Cases in the first place. Nowhere in any Louisiana coastal case is there evidence of a government contract for the production of crude oil, and the numerous *refinery* contracts filed in *Riverwood* and in this record say nothing about how crude oil should be produced.[13]

In *Riverwood*, Humble Oil (an Exxon predecessor) operated in the Potash Field. The Declaration of Defendants' expert Gravel shows that the crude produced by Humble in the Potash

---

[11]*Plaquemines Par. v. Chevron USA, Inc.,* 22-30055, 2022 WL 9914869, at *2.

[12]Defendants argue that a refiner's own crude production practices "need only be *related to* its actions *as a refiner* under the federal government's subjection, guidance, and control." *See, e.g. Plaquemines Parish v. Total Petrochemicals and Refining U.S.A. Inc.,* 2:18-CV-05256, Doc. 87, ECF p. 18.

[13]*See* refinery contracts, Doc. 42, Exh. 1, Part 81, ECF pp. 349-400; Part 82, ECF pp. 2-150, ROA.14008-14208; Doc. 42, Exh. 1, Part 101, ECF pp. 59-64, ROA.17362-17368, which shows that even the refinery contracts may not support federal officer jurisdiction. **Plaintiff attaches as Exhibit 2 a concordance table showing the range of the appellate record page numbers ("ROA") in each "Part" of Doc. 42 of this record.**

Field *was not sent* to Humble's Texas refinery, but rather was sent to the Standard Oil of Louisiana (SOLA) refinery in Baton Rouge and to the Shell Oil refinery in Norco, both of which refined critical war products under government contracts.[14] SOLA was an affiliate of Humble.[15] In rejecting Defendants' post-*Latiolais* argument that they "acted under" federal officers because they supplied Potash crude to refineries that used it to produce avgas under a government contract, Judge Feldman found that any "government directives" in refinery contracts "were directed at the refiners, and not at Humble Oil," and that Humble did not "act under" any federal officer that was directing the refiners.[16] Judge Feldman found that Humble's *crude production activities* were not "under that contractual direction" aimed at any refiner,[17] including its own affiliate's refinery.

In *Riverwood*, no individual corporate defendant produced the crude that it refined, even Humble, which *owned* a Baytown, Texas, refinery that produced critical war products under government contracts during WWII.[18] But Defendants contend that, unlike Humble in *Riverwood*, at least one corporate defendant in each of the Related Refinery Cases "acted under" federal officers because it produced crude that was refined by its own refinery. The Fifth Circuit in *Riverwood* observed: "As the district court noted, the 'refineries, who had federal contracts and acted pursuant to those contracts, can *likely* remove [under § 1442], but that does not extend to [parties] not *under that* contractual direction.'"[19] Ignoring this express limitation of "*likely*" federally- governed claims to claims involving *federal directives embedded in refinery contracts*, Defendants rely on this *dictum*

---

[14]*See* Gravel Declaration, Doc.42, Exh. 1, Part 81, ECF pp. 289-92, ROA.13948-50, ¶¶ 69-75.
[15]*See* footnote 17, *infra.*
[16]*Par. of Plaquemines v. Riverwood Prod. Co.*, 18-CV-05217, 2022 WL 101401, at *7.
[17]Doc. 42, Exh. 1, Part 102, ECF pp. 185, ROA.17559.
[18]Doc.42, Exh. 1, Part 81, ECF pp. 294-5, ROA.13953-54, ¶ 78.
[19]*Plaquemines Par. v. Chevron USA, Inc*., 22-30055, 2022 WL 9914869, at *4 (5th Cir. Oct. 17, 2022) (emphasis added).

in *Riverwood* as supporting federal-officer jurisdiction in the Related Refinery Cases. The Fifth Circuit **did not hold in *Riverwood*,** however, that a defendant who produced crude that it also refined can remove under § 1442 if its own refinery was under contractual federal direction and its production operations were not.

The purpose of § 1442 is to provide federal officers, or persons acting under federal officers, a federal forum to assert federal defenses to state law claims. A refinery's acts under a federal officer are the acts of the refinery, not any crude oil operator, and the refinery's colorable federal defenses are the refinery's federal defenses, not any crude oil operator's federal defenses. And this is so even when crude oil production operations are owned by the same corporate entity that refines its own crude under a government contract. Addressing this specific issue in a different context, the Fifth Circuit in *St. Charles II*, a health insurance case, explains that a defendant "acting under" a federal officer does not necessarily "act under" that officer for "all purposes":

> [A]s the district court correctly noted, *we did not hold in St. Charles I that BCBS "acts under" the direction of OPM for all purposes*. If the district court concludes that St. Charles's waivers are valid, then there may be little room to contend that BCBS 'acted under' OPM in administering non-federal health insurance payments. And the same may be true if, irrespective of the waivers, the court concludes that St. Charles's complaint does not include any federally-governed claims . . ."[20]

*St. Charles II* emphasizes that the "acting under" and "connection" elements of the *Latiolais* test are "distinct."[21] Section 1442 jurisdiction requires that the plaintiff's complaint include "**federally governed claims**"[22] *and* that "the **specific conduct** at issue" be "connected or associated with an act pursuant to the federal officer's directions."[23] As noted, Defendants can point to no

---

[20]*St. Charles Surgical Hosp. v. La. Health Serv.*, 990 F.3d 447, 455 (5th Cir.2021)(emphasis added).
[21]*Id*. at 454.
[22]*Id.* at 455.
[23]990 F.3d 447, 454.

provision in any government refinery contract that addresses crude production methods. Thus, applying the reasoning of *St. Charles II,* a company found to be "acting under" a federal officer for purposes of its avgas refining during WWII is not "acting under" for purposes of its crude oil production when its avgas refining is subject to federal contractual controls and its crude production is not. The Fifth Circuit in *Riverwood* affirmed Judge Feldman's finding that the crude production activities of Defendants were federally regulated, but not controlled.

## IV.    *RIVERWOOD* NOT FACTUALLY DISTINGUISHABLE

As noted previously, Humble's Potash field crude in *Riverwood* was not sent to its Baytown refinery, but rather was sent to SOLA's refinery in Baton Rouge and Shell's refinery in Norco, both of which refined critical war products for the government.[24] SOLA was a remote subsidiary of Standard Oil Company of New Jersey (a New Jersey corporation), and Humble was majority owned by the same Standard Oil Company of New Jersey (a New Jersey corporation).[25]  Despite the fact that some of Humble's Potash crude was refined ***by its affiliate SOLA,*** Judge Feldman found that Humble's crude production activities were not "under that contractual direction" aimed at any refiner, including its affiliate SOLA's refinery.[26]  The Fifth Circuit affirmed.  Thus, to prevail on its argument that *Riverwood* does not foreclose a finding of federal officer jurisdiction in the Related Refinery Cases, Defendants must show that the defendants' crude production activities in the Related Refinery Cases should be treated differently from ***Humble***'s Potash activities in *Riverwood* that produced crude refined ***by its affiliate,*** SOLA.

---

[24]*See* Gravel Declaration, Doc. 42, Exh. 1, Part 81, ECF pp. 289-92, ROA.13948-50, ¶¶ 69-73.
[25]*Id*. at ECF p. 290, ROA.13942, footnote 152.
[26]Doc. 42, Exh. 1, Part 102, ECF p. 185, ROA.17559.

Such an argument obviously slices the baloney mighty thin, because under *Riverwood*, the act of supplying crude to a government-contracted affiliate is not an "act under" a federal officer.[27] No plausible argument can be made that the issue of federal control in an alleged § 1442 case should turn on the distinction between the crude production activities of a corporate defendant that refined the crude it produced (*i.e.*, defendants in the Related Refinery Cases) and the crude production activities of a corporate defendant that shipped its crude to an affiliated refinery (*i.e.*, the defendant Humble in *Riverwood*). Any alleged distinction between *Riverwood* and the Related Refinery Cases is a distinction without a difference. The Fifth Circuit's refusal in *Riverwood* to find that Humble "acted under" a federal officer directly refutes § 1442 jurisdiction in the Related Refinery Cases.

---

[27]There was no connection between crude production and refining operations during WWII, even in refining companies that had a crude production division. Defendants' own evidence shows that regardless of the ownership or corporate affiliation of any refinery, the PAW programmed the distribution and transportation of crude oil to refiners *only after* it was produced in the field. Defense expert Gravel states: "PAW's crude oil assignments [to refineries] took into consideration a range of factors, including efficiency of transport of both crude and refined products, capacity of the refinery to handle the volume of crude, and the types of war products that could be made from select crude." Doc. 42, Exh. 1, Part 81, ECF pp. 289, ROA.13948, ¶ 68. Noticeably absent from this listing of factors is the crude oil producer's conduct in producing crude, and its relationship or affiliation, if any, with the refiner. The government's post-production programming of the distribution and transportation of crude had nothing to do with how the crude was produced before it was available for transport, ***and had nothing to do with the corporate identity of the owner of the particular refinery***. *See* attached Brigham Declaration, Exhibit 1, ¶¶ 7-14. During WWII, crude oil was an off-the-shelf commodity sold on the open market. *See* Wimberley, Doc. 42, Exh. 1, Part 101, pp. 16-19 (SOLA's refinery purchased crude from 15 different producers during the 7 months examined.); Doc. 42, Exh. 1, Part 94, pp. 26-47 (Pan American's Texas City refinery purchased crude oil from dozens of producers during WWII); Gravel, Doc. 42, Exh. 1, Part 81, pp. 250-251, ¶¶ 5(5) -5(6) (PAW directed crude to refineries without regard to refiner/producer affiliation); Brigham, Doc. 42, Exh. 1, Part 94, pp. 159,185-89. ¶¶ 8(E), 80-83 (integrated oil companies routinely bought and sold crude amongst themselves). Even if the government had directly purchased crude, such purchases would not have supported §1442 jurisdiction. *Mayor & City Council of Baltimore v. BP P.L.C.*, 2022 WL 1039685, at *28 (4th Cir. Apr. 7, 2022)(sale of off-the-shelf products do not support §1442 jurisdiction). In *Winters v. Diamond Shamrock*, 149 F.3d 387, 398–400 (5th Cir.1998), the Fifth Circuit found that defendants "acted under" federal officers when they sold Agent Orange to the government under strict specifications because Agent Orange *was different from* the "off the shelf" herbicides they sold to the general public. Under Defendants' jurisdictional theory, the government's purchase of Diamond Shamrock's off-the-shelf herbicides would support §1442 jurisdiction.

*Riverwood* means just what it says, *i.e.*, that acts under federal direction give rise to federal officer jurisdiction, and acts not under federal direction do not. Obviously, a "person" who "acts under" a federal officer does not "act under" that officer for everything that he does. Plaintiff's petition says nothing about refining. The interpretation of § 1442 urged by Defendants would treat the crude production activities of producer-only companies differently from the crude production activities of producer-refining companies, simply based on the entirely coincidental fact that the producer-refining companies happen to have a refining division that refined some amount (no matter how small) of their own crude. The coincidental occurrence of refining and crude production within the same corporate entity bears no relevance to the issue of whether the government directed and controlled crude production. *Riverwood* specifically held that the government did not control crude production, and thus WWII crude producers did not "act under" federal officers. In sum, Defendants' argument that the Related Refinery Cases are distinguishable from *Riverwood* cannot be squared with *St. Charles II* or *Riverwood*.

## V. THE SAME REFINERY-BASED ARGUMENTS WERE REJECTED IN *RIVERWOOD*

In *Riverwood*, defendants made essentially the same refinery-based arguments that they now make in both the Related and non-Related Refinery Cases remaining in this District.

The "acting under" prong was not contested in *Latiolais*.[28] The primary focus of *Latiolais* was the causation prong. *Latiolais* broadened the Fifth Circuit's causal nexus test, but said nothing about the "acting under" prong.[29] Both *Latiolais* and *St. Charles II* make clear that this revision of

---

[28]*Latiolais,* 951 F.3d 286, 291 ("Avondale's status as a "person" and its federal contract with the Navy for repairs . . . satisfy the first and second conditions. Whether any 'causal nexus' was required is the focal point of dispute, but the parties also debate the 'colorable federal defense' criterion.").

[29]*Id.* at 296.

the causal nexus test did not effect any change in the "acting under" prong.[30]

The defendants in *Riverwood* tried (but failed) to employ *Latiolais'* expansion of the causal nexus test as a means of expanding the "acting under" prong. The *Riverwood* defendants argued in the district court that *Latiolais* "significantly expand[ed] the federal directives that are subject to federal officer jurisdiction,"[31] and that federal directives *contained in government contracts with refineries* were "connected" and "associated with" their wartime crude oil production activities.[32] In the Fifth Circuit, the *Riverwood* defendants argued that "PAW also directed refineries to use [oil produced by crude oil producers] to produce specific petroleum products for the war effort"[33] (what else could they have used?), that "Humble significantly increased its production of crude oil from Potash over pre-war levels to meet government needs for crude at wartime refineries making petroleum products for the government"[34] (increasing supply to meet demand occurs regardless of war), and that crude producers supplied refiners "under PAW's watchful supervision"(whatever that means!).[35] None of this amounts to federal direction.

The Fifth Circuit found no evidence that PAW's "watchful supervision" *of crude production* extended beyond regulation, no evidence that the *Riverwood* defendants increased production (70% of which went to civilians[36]) specifically to supply government-contracted refineries, and unlike the

---

[30]*Id.* at 292 ("Congress broadened federal officer removal to actions, not just causally connected, but alternatively connected or associated, with acts under color of federal office."); *St. Charles II,* 990 F.3d 447, 454 (5th Cir. 2021) ("[T]he 'acting under' and 'connection' elements . . . **are distinct**.").

[31]Doc. 42, Exh. 1, Part 81, p. 207.

[32]*Id.*

[33]Appellants' Brief in *Riverwood*, p. 22, Doc. 42, Exh. 1, Part 105, p. 107

[34]*Id*. at p. 24, Doc. 42, Exh. 1, Part 105, p. 109.

[35]*Id*. at p. 25, Doc. 42, Exh. 1, Part 105, p. 110.

[36]Doc. 42, Exh. 1, Part 94, p. 188, ROA 16451.

contractors in *Winters* and *Sawyer*, no evidence that crude oil was produced "for the government."[37] WWII refineries needed more oil to refine for both civilian and military use, so the E & P operators increased production. *Riverwood* held that to the extent crude producers had any relationship at all with the government, that relationship involved mere regulation,[38] and was not dependent on refinery contracts or federal directives to refineries. Defendants' argument that the government exercised control at the "field level" is not supported by the abundant evidence in the record, and was specifically rejected in *Riverwood*. Defendants' attempt to deploy arguments the Fifth Circuit rejected out of hand underscores the weakness of their refinery-based theories.

## VI.    PRODUCING CRUDE OIL HAS NEVER BEEN A GOVERNMENT TASK

Producing crude has never been a government task, and defendants offer no evidence to the contrary. Arguably, if the government had not contracted with refiners for the production of avgas in accordance with the federal government's specifications, the federal government would have had to produce that critical war product itself. But regardless of whether the government "would have had to produce" avgas itself, the government certainly would never have had to produce **crude oil** itself. WWII triggered market demands for crude oil that were virtually unlimited, and the industry did not have to be pressured or controlled to meet those demands.[39] Crude oil was bought and sold on the open market,[40] and no government controls of crude production were required to ensure that

---

[37]*Sawyer,* 860 F.3d 249, 255 (4th Cir. 2017); *Winters,* 149 F.3d 387 (5th Cir.1998).

[38]*Plaquemines Par. v. Chevron USA, Inc.*, 22-30055, 2022 WL 9914869, at *3)("Thus, to the extent that Producers contend that they were 'acting under' a federal officer because they complied with federal regulations or cooperated with federal agencies, we find those arguments unpersuasive.").

[39]*See* Doc. 42, Exh. 1, Part 105, p. 180, ROA.16443, ¶ 61 ("No government agency had to compel [the oil industry] to do the job."). Doc. 42, Exh. 1, Part 81, p. 308, ROA.13967 ("production of oil in [Louisiana] reached an all time high"); Doc. 42, Exh. 1, Part 48, p. 81, ROA.6869 (Ralph Davies: "The war caused a heavy drain on the oil fields of this country.").

[40]*See* footnote 8, *supra*.

refineries had access to the crude oil they needed to comply with government contracts. Defendants increased the supply of crude oil voluntarily and without government pressure.[41]

Defendants admit they must prove they were under the "subjection, guidance, or control" of a federal superior, *and* that they helped carry out "the duties and tasks of a federal superior."[42] There is no evidence that the federal government ever drilled for or produced oil and gas.[43] In *Glenn v. Tyson Foods, Inc.*, the Fifth Circuit found that Tyson did not perform a government task by continuing poultry production at the government's request during the pandemic:

> If anything, Tyson has a much harder case to make than Philip Morris did. At least the actions that Philip Morris took had previously been carried out by the government. Not so with Tyson. Packaging and processing poultry *has always been a private task—not a governmental one*.[44]

Likewise, not so with Defendants. Crude production has "always been a private task— not a governmental one."[45]  Based on the record evidence, Defendants actually have an even harder case to make than Tyson. Defendants' conduct in supplying the government with refined products involved only the task of refining crude, not the task of crude production itself.  The duty or task of producing crude has never been the duty or task of a "federal superior."[46]

---

[41]*See* evidence of practicing historians and government officials, Doc. 42, Exh. 1, Part 105, 519-529.

[42]*See, e.g., Plaquemines Parish v. Total Petrochemicals and Refining U.S.A. Inc.,* 2:18-CV-05256, Doc. 87, ECF p. 14 ("To satisfy § 1442(a)'s 'acting under' requirement, a private firm must be under the 'subjection, guidance, or control' of a federal superior, **and** its actions 'must involve an effort to assist, or to help carry out, the duties or tasks of [a] federal superior.' *Id.* at 152. Those efforts must go 'beyond simple compliance with the law,' such as by 'helping the Government to produce an item that it needs.'").

[43]**Chevron conceded in *Mayor & City Council of Baltimore v. BP P.L.C.*, 2022 WL 1039685, at \*34 (4th Cir. Apr. 7, 2022), that "the government relies upon private companies because it does not have its own oil and gas engineers or drilling equipment."**

[44]*Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 236 (5th Cir.2022)(emphasis added).

[45]*See* footnote 43*, supra.*

[46]*Watson v. Philip Morris Companies, Inc.,* 551 U.S. at 152.

14

The unanimous Supreme Court decision in *Watson v. Philip Morris Companies, Inc.*[47] details the history of the "acting under" element, which dates back to the War of 1812 when customs officials needed the protection of federal courts from hostile New Englanders opposed to the trade embargo with England.  It traces the Court's treatment of the various iterations of the federal officer statute from 1812 to the present, noting that "[a]ll the Court's relevant post-1948 federal officer removal cases that we have found reflect or are consistent with this Court's pre–1948 views."[48]  In one significant expression of the Court's pre-1948 views in *Davis v. South Carolina*, "the Court wrote that the removal statute applies to private persons 'who lawfully assist' the federal officer "*in the performance of his official duty*.'"[49]  The *Watson* Court then points to *Davis* as specifically supporting its finding that "precedent and statutory purpose make clear that the private person's 'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior."[50]

Accordingly, the Supreme Court's reference to "duties and tasks of a federal officer" in its delineation of the "acting under" element in *Watson* is just another way of saying that a "person" who "acts under" a federal officer must be assisting that officer in carrying out his official duties. By the same token, the Fifth Circuit's observation in *St. Charles II* that a person "acting under" a federal officer does not act under that officer for all purposes is also just another way of saying that a person "acts under" a federal officer only when assisting that officer in carrying out the his official duties. *Riverwood* held, in effect, that the crude production duties of Defendants were their own

---

[47] 551 U.S. 142 (2007).
[48] *Watson v. Philip Morris Companies, Inc.,* 127 S.Ct. 2301, 2307 (2007)
[49] *Watson,* 551 U.S. 142, 151, quoting *Davis,* 107 U.S., at 600, 2 S.Ct. 636.
[50] *Id*. at 152.

duties, *not the official duties of a federal officer*.

## VII.  THE JURISDICTIONAL REQUIREMENT OF A COLORABLE FEDERAL DEFENSE

Federal officer jurisdiction "must be predicated on the allegation of a colorable defense."[51] "[T]he statute's requirement that a removing party assert a colorable federal defense remains a constitutional, viable, and significant limitation on removability,"[52] and is "the very source of the court's constitutional jurisdiction over the claim."[53] The "colorable federal defense" requirement is derived from the "act under color of such office" language in §1442.[54]

When a removing party is not itself a federal officer, § 1442 requires proof of an act under federal direction **and** a federal defense.[55] "The purpose of [§ 1442] is to provide a federal forum in cases *where a defendant is entitled to raise a defense arising out of their official duties*."[56] Since the Fifth Circuit in *Riverwood* held in essence that the duties of crude producers *were not official duties* (*i.e.*, not the "task of a federal officer"), no colorable federal defense that would support §1442 jurisdiction could possibly arise out of these duties because the very purpose of §1442 is to provide a federal forum to defendants who are "entitled to raise a defense *arising out of their official duties*."[57] Here, Defendants' "acts" in producing crude are not "act[s] under color of [federal] office."

---

[51]*Mesa v. California*, 489 U.S. 121, 129 (1989).

[52]*Latiolais,* 951 F.3d 286, 296 (5th Cir. 2020), citing *Mesa*, 489 U.S. at 136–37.

[53]*Williams v. Todd Shipyards Corp*., 154 F.3d 416 (5th Cir.1998), quoting *Mesa, supra*, at 136.

[54]*Mesa*, 489 U.S. 121, 135 ("[W]e concluded that 'in the performance of his duties' meant no more than 'under color of office,' and *that Congress meant by both expressions to preserve the pre-existing requirement of a federal defense for removal*.")(emphasis added); *Willingham v. Morgan,* 395 U.S. 402, 406–07 (1969)(same); *Jax Leasing v. Xiulu Ruan*, 359 F. Supp.3d 1129, 1136 ("requirement of a colorable federal defense flows from the 'act under color of such office' language").

[55]*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir.2020).

[56]*Jackson v. Avondale Indus. Inc.,* 469 F.Supp.3d 689, 701 (E.D.La.2020)(emphasis added). *Arizona v. Manypenny*, 101 S.Ct. 1657, 1664 (1981) ("Historically, removal under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a *federal official is entitled to raise a* defense *arising out of his official duties*.")(emphasis added).

[57]*Jackson v. Avondale Indus. Inc., supra*, citing *Arizona v. Manypenny*, *supra.*(emphasis added).

16

A crude producer who **has not** "acted under" a federal officer in producing crude cannot remove a civil action based on his E & P activities by asserting a colorable federal defense arising from his official duties as a refiner. Yet, this is the upshot of Defendants' argument in the Related Refinery Cases. Nothing in § 1442 authorizes an E & P division of a corporate defendant that *has not* "acted under" a federal officer to co-opt willy-nilly the colorable federal defenses of a separate refinery division of the same corporate defendant that *has* "acted under" a federal officer.

As noted previously, *St. Charles II* held that a defendant "acting under" a federal officer does not necessarily "act under" that officer for "all purposes"[58] Under Defendants' far-fetched jurisdictional theory, a defendant subject to *any* federal direction, however limited, "acts under" federal officers for everything he does.

## VIII.    THE FIFTH CIRCUIT'S FINDINGS IN *RIVERWOOD* CONTROLS

Defendants do not list this case as a Related Refinery Case. Instead, they argue that this non-Related Refinery Case is removable because the Related Refinery Cases are removable. As shown above, the Related Refinery Cases are not removable, and thus, the non-Related Refinery Cases, including this case, are not removable. Furthermore, *Watson* limits federal officer removal to the conduct alleged in the complaint. The allegations of the petition are limited to conduct occurring within the operational area defined in the petition. Defendants cannot logically distinguish this case from *Riverwood*.

The arguments in support of remand made by Plaintiff and Intervenors in the district and appellate courts in *Riverwood* are incorporated herein by reference. For the convenience of the Court,

---

[58]*St. Charles Surgical Hosp. v. Louisiana Health Serv.*, 990 F.3d 447, 455 (5th Cir.2021).

Plaintiff and Intervenors attach as Exhibit 3 their joint Appellate Brief filed in the Fifth Circuit.[59] The entire *Riverwood* appellate record on appeal (including all of the briefing and evidence filed in the district and appellate courts) is attached to the Joint Stipulation of the parties. *See* Doc. 42.

In opposing a previous motion to re-open in *Parish of Plaquemines v. Palm Energy Offshore, L.L.C.*, Chevron U.S.A., Inc. argued that "the **bottom line** is that the Fifth Circuit's decision in the *Riverwood* appeal **will provide** *the controlling legal framework for this Court to apply in analyzing* Plaintiffs' contentions in their expert report and petition, **and Defendants' arguments that those contentions give rise to federal office jurisdiction**."[60] Similar statements were made by various defendants opposing previous motions to re-open in other Eastern District cases.[61] Now that their arguments in *Riverwood* have been summarily rejected in an unpublished, *per curiam* opinion by the Fifth Circuit, Defendants want to move their "bottom line," throw *Riverwood* in the trash, and start the removal game all over again. Five years of baseless removal arguments are enough.

---

[59] Plaintiff has attempted as much as possible to avoid addressing issues that were resolved by the Fifth Circuit in *Riverwood*. Those issues are detailed in the attached appellate brief, Exhibit 3.

[60] *The Parish of Plaquemines v. Palm Energy Offshore, L.L.C.*, Civil Action No. 2:18-CV-05259, Doc. 45, ECF page 5(emphasis added); and *see also* Doc. 51, ECF p. 3; and also Doc. 61, ECF pgs. 8-9.

[61] *See St. Bernard et al. v. Atlantic Richfield, et al.*, 18-CV-05222, Doc. 75, ECF p. 9; *Plaquemines et al. v. Caskids, et al.*, 18-CV-05262, Doc. 38, ECF pgs. 8-9; *Plaquemines et al. v. LLOG, et al.*, 18-CV-05265, Doc. 48, ECF pgs. 8-9; *Plaquemines et al. v. Goodrich Petroleum, et al.*, 18-CV-05238, Doc. 54, pgs. 8-9.

*By Attorneys for Plaintiff, the Parish of Jefferson*
*and State of Louisiana, ex rel. Parish of Jefferson:*

Donald T. Carmouche (2226)
Victor L. Marcello (9252)
John H. Carmouche (22294)
William R. Coenen, III (27410)
Brian T. Carmouche (30430)
Todd J. Wimberley (34862)
Ross J. Donnes (33098)
D. Adele Owen (21001)
Leah C. Poole (35092)
Christopher D. Martin (30613)
Michael L. Heaton (38773)
TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991
Fax: (225) 448-2568

Philip F. Cossich, Jr. (1788)
Darren Sumich (23321)
David A. Parsiola (21005)
Brandon J. Taylor (27662)
COSSICH, SUMICH, PARSIOLA & TAYLOR, L.L.C.
8397 Highway 23, Suite 100
Belle Chasse, LA 70037-2648
Telephone: (504) 394-9000
Fax: (504) 394-9110

Bruce D. Burglass, Jr. (1411)
Andre' C. Gaudin (20191)
Scott O. Gaspard (23747)
BURGLASS & TANKERSLEY, LLC
5213 Airline Drive
Metairie, LA 70001-5602
Telephone: (504) 836-0407
Fax: (504) 287-0447

By: */s/Victor L. Marcello (9252)*

19

*By Attorneys for Intervenor-Plaintiff, the State of Louisiana, through the Department of Natural Resources, Office of Coastal Management and its Secretary, Thomas F. Harris:*

J. Blake Canfield (30426)
Executive Counsel
Donald W. Price (19452)
Special Counsel
DEPARTMENT OF NATURAL RESOURCES
Post Office Box 94396
Baton Rouge, LA 70804

By:  /s/ Donald W. Price (19452)

*By Attorney for Intervenor-Plaintiff, the State of Louisiana, ex rel. Jeff Landry, Attorney General:*

Ryan M. Seidemann, (28991)
Assistant Attorney General
LOUISIANA DEPARTMENT OF JUSTICE
1185 North 3rd Street
Baton Rouge, LA 70802
Telephone: (225) 326-6085
Fax: (225) 326-6099

By:  /s/ Ryan M. Seidemann (22294)